ARKANSAS STATE HIGHWAY COMM'N *v.*
ARVILLE STALLINGS ET UX

5-5176                                      455 S. W. 2d 874

Opinion delivered June 29, 1970

1208

*Thomas Keys* and *James Dowell,* for appellant.

*Wayland Parker,* for appellees.

JOHN A. FOGLEMAN, Justice. Appellant mounts a three-pronged attack upon a jury award of $6,800 compensation to appellees for the fee simple taking of 19.37 acres from a 118-acre tract for the relocation of United States Highway No. 71 as a controlled-access facility. Appellant contends, first, that the court erroneously refused to strike the testimony of Arville Stallings and of appellees' value expert Glenn West; second, that the trial court erred in failing to quash the jury panel; and, third, that there is no substantial evidentiary support for the verdict. We have resolved the second point adversely to appellant in *Arkansas State Highway Commission* v. *Sadler,* 248 Ark. 887, 454 S. W. 2d 325.

The third ground and the first are intertwined and interdependent, being hinged upon the question whether the testimony of the witnesses is substantial. We find the testimony of the landowner to be vulnerable to appellant's assault. Appellant moved that his value testimony be stricken as being without substantial basis. There is no question about Arville Stallings having sufficient familiarity with the land to qualify him to express his opinion as to the value of the lands taken, as well as the value of the whole tract before the taking and the value of the tracts remaining after severance of the whole by the right-of-way. When examined as to the value of the 118-acre tract as it existed immediately before the taking, he responded that if he were to put a price on it, he'd want $20,000. He responded affirmatively to leading questions as to wheth-

er he thought this price was the fair market value and his belief that the land "would go" for that price. Yet when asked about the value of the lands taken, he again said that if he were to put a price on it, $250 per acre would be a bare minimum, or that he would average the value at this figure. He interjected a reminder that he did not have the land for sale. He arrived at his $7,500 valuation of the remaining lands by stating that there was enough damage to the land by reason of the taking to leave only this value. Even if it be said that Stallings' measure of values was not a statement of the value of the lands to him, the price fixed by a reluctant, not a willing, seller hardly meets the test for evidence of market value.

Just compensation in partial taking cases is measured by the difference between the market value of the whole tract at the time of the taking and the market value of the remaining lands, or the market value of the lands taken plus the net damage to the remaining land. *Young* v. *Arkansas State Highway Commission,* 242 Ark. 812, 415 S. W. 2d 575; *Arkansas State Highway Commission* v. *McAlister,* 247 Ark., 757 447 S. W. 2d 649. Market value is the price which could be agreed upon at a voluntary sale by an owner willing to sell and a purchaser willing to buy. *Desha* v. *Independence Bridge District No. 1,* 176 Ark. 253, 3 S. W. 2d 969. Stallings' testimony cannot be taken as evidence tending to prove the measure of compensation. We have heretofore held that value testimony of a landowner based upon an improper standard is not substantial evidence. *Arkansas State Highway Commission* v. *Perryman,* 246 Ark. 120, 444 S. W. 2d 564; *Arkansas State Highway Commission* v. *Darr,* 248 Ark. 730, 437 S. W. 2d 463.

We cannot say that failure to strike Stallings' value testimony was error, however. Appellant did not move to strike it or make any other objection to it until appellees had presented the testimony of Glenn West, an expert value witness called by appellees, and had rested. We have not had this exact situation pre-

sented previously. We have held that granting a motion to strike all of a witness' testimony, a part of which was competent, made after other witnesses have testified is error. *Johnston* v. *Ashley,* 7 Ark. 470; *Phelan* v. *Bonham,* 9 Ark. 389. We have also held that objections to evidence were waived when first raised in questioning the sufficiency of the evidence to support a jury verdict (*Sandusky* v. *Warren,* 177 Ark. 271, 6 S. W. 2d 15), and that an objection made after the trial court has commenced instructing the jury comes too late. *Beene* v. *Youngblood,* 247 Ark. 667, 447 S. W. 2d 62. We have also held that excluding inadmissible portions of testimony from a jury's consideration, when objection thereto was first raised upon a motion for a directed verdict made after both parties had rested, was not error. *American Workmen* v. *Ledden,* 196 Ark. 902, 120 S. W. 2d 346.

It is generally held that objections to evidence must be seasonably made, in the absence of good cause for the objector not doing so and prejudice to the proponent. *Solomon* v. *Dabrowski,* 295 Mass. 358, 3 N. E. 2d 744, 106 A. L. R. 464 (1936); *Schaffer* v. *Dorsey,* 70 Ill. App. 2d 390, 217 N. E. 2d 19 (1966); *Traders and General Insurance Co.* v. *Wright,* 95 S. W. 2d 753, 766 (Tex. Civ. App. 1936); Ball, *Objections to Evidence,* 15 Ark. L. Rev. 69, 70 (1960-61). The same authorities demonstrate that inexcusable delay in making a motion to strike objectionable testimony may be grounds for denial of the motion and that a court may properly overrule such a motion made after a witness has been excused from the stand, or discharged from attendance at the trial or after other witnesses have testified or after the proponent's case has been concluded. It may well be that the proponent would be severely prejudiced by a delay in making a motion to strike or that the trial judge should not be expected to put the testimony to which belated objection is made in proper perspective to make a correct ruling after other witnesses have testified, particularly where a close question is involved and the exact words of a witness may be the determining factor. The trial judge is in a much better position than an appellate court to judge whether such a motion is time-

ly under the circumstances existing when it is made. He should only be held to the exercise of a sound judicial discretion under the circumstances existing here. We cannot say that denial of the motion of appellant was an abuse of discretion so we find no error on this point.

On the other hand, appellant did not demonstrate that there was no reasonable basis for the testimony of Glenn West, appellees' only other witness. He was not only a real estate broker and salesman, operating within a radius of 50 to 75 miles of Greenwood, he had actually bought and sold lands in the area himself. Appellant argues that there is not a reasonable basis for West's valuation of the 118 acres before the taking, because he "averaged out" the value at $150 per acre. This approach is not fatal, at least in this instance, where West stated that he valued the woodlands on the tract at $100 per acre and the open lands at $200 per acre and that each such type of land constituted about one-half of the entire tract.

Appellant says that West's reference to the only sale he considered comparable furnished no basis for his valuation of the tract and assessment of the damage to it. The sales referred to by West were his purchase of a 180-acre tract at $55 per acre on February 4, 1966, pursuant to a contract dated in June, 1965, and his sale of 120 acres of that tract for $125 per acre on August 1, 1966, some two years before the taking. In comparing the land he had bought and sold himself, West located it as being about four miles southeast of the Stallings property which was two miles via a county road from downtown Greenwood. He described that land as being rugged terrain bisected by a valley, just as he had characterized appellees' land. He said that he had sold the worst part and kept the best part, which was pastureland. He pointed out that his tract had some county road frontage, somewhat similar to that on the Stallings property. He also mentioned that the lands he purchased and sold were grown up and unimproved.

We cannot say as a matter of law that these sales were not comparable.

The major part of the remainder of appellant's argument is based upon the assertion that there is no reasonable basis for West's assessment of a $75 per acre decrease in value of the 23.43-acre tract left west of the right-of-way and a $50 per acre diminution in value of the 75.2-acre residual east of the highway. There was no error in the denial of appellant's motion to strike West's testimony because the motion asked that all his value testimony be stricken and not just this part. Even if it is appropriate that the testimony of a witness as to "after" values be stricken, testimony as to "before" values is not thereby rendered inadmissible. *Young* v. *Arkansas State Highway Commission,* 242 Ark. 812, 415 S. W. 2d 575; *Arkansas State Highway Commission* v. *Russell,* 240 Ark. 21, 398 S. W. 2d 201. See also, *Arkansas State Highway Commission* v. *Wilmans,* 236 Ark. 945, 370 S. W. 2d 802.

We also find West's testimony to be substantial on this point, however, along with his testimony relating to the value of the land taken. This witness classified the property as a "combination ranch"—for hogs, goats and cows—from the standpoint of highest and best use. He stated that at the time of the taking appellee could have run about 15 head of cattle on the land. Where there had been easy communication between most parts of the tract by means of a county road, the only connection between the two tracts after the taking was a culvert in a creek bed, far from the road. West granted that a cow might drift through this culvert, but doubted that cows could be driven through it. He said that if part of them did go through then the herd would be split. He thought that a rancher would have to haul his cattle back and forth between the tracts. Not only did he consider the severance of the two tracts, he pointed out the odd, irregular shape of part of the remainder. West also considered the extreme cuts and fills through the property necessitated for highway

construction as having some bearing on the value of the remaining tracts.

West said that the 19.37 acres taken was the best land in the whole tract, insofar as grassland was concerned, with the major part of that land having been in a valley through which the right-of-way passes. He said that one acre of the lands taken lying on the south side of the county road through the tract was suitable for a homesite valued at $1,000. Even though the major part of the remaining 18.37 acres was the best land, he only considered it as having a value of $150 per acre in arriving at his total valuation of $3,755.50 for the lands taken. In valuing the lands taken, he probably took into consideration his estimate that there were six or seven acres of woodland in the tract taken.

We find West's testimony to be substantial and to support the jury verdict.

The judgment is affirmed.